UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

NEW YORK LIFE INSURANCE COMPANY,

                Plaintiff,

       v.

DANYAL HASSAN et al.,

                Defendants.

**DECISION AND ORDER**
09-CV-1075A

---

On December 17, 2009, former plaintiff New York Life Insurance Company ("NY Life") filed an interpleader complaint to resolve a conflict between two sets of potential claims against the life insurance proceeds of decedent Aasiya Z. Hassan. One set of potential claimants—the "2006 Beneficiaries"—consisted of five beneficiaries that Aasiya named in her original 2006 life insurance policy: her son, defendant Danyal Hassan (a 29% beneficiary); her daughter, defendant Rania Hassan (29%); her sisters, defendants Salma Zubair (22%) and Asma Firfrey (15%); and her brother, defendant Haaris Zubair (5%). The other set of potential claimants consisted of four beneficiaries—the "2008 Beneficiaries"—who supposedly replaced all of the 2006 Beneficiaries through a change form that NY Life received in June 2008: Muzzammil Hassan, Aasiya's

husband (a 40% beneficiary);[1] Sonia Hassan, Aasiya's stepdaughter (20%); Michael Hassan, Aasiya's stepson (20%); and Ahmed Arif, Aasiya's nephew (20%). NY Life commenced this interpleader case after receiving information suggesting that the June 2008 change of beneficiary form was fraudulent and contained a forgery of Aasiya's signature.

Since this case began, the Court has issued three decisions governing the disbursement of Aasiya's life insurance proceeds. (*See generally* Dkt. Nos. 27, 34, 38.) To summarize the findings in those prior decisions briefly, NY Life named all nine potential beneficiaries as defendants, but only two ever appeared: Danyal and Rania. On September 14, 2010, the Clerk of the Court filed an entry of default against all of the other defendants. On October 27, 2010, Danyal and Rania filed a motion for default judgment awarding them the percentage portions of the life insurance proceeds assigned to them under the original 2006 policy. On February 25, 2011 (Dkt. No. 38), the Court granted the motion for default judgment. The Court directed disbursement of 29% of the life insurance proceeds[2] to Danyal and 29% to Rania. Because no other claimants contested ownership of the remaining funds, the Court directed the Clerk of the Court to

---

[1] On February 7, 2011, an Erie County Court jury found Hassan guilty of second-degree murder for beheading Aasiya. On March 9, 2011, Hassan was sentenced to 25 years to life.

[2] The Court previously permitted disbursement of some of the proceeds to plaintiff's counsel to cover their costs and fees. (*See* Dkt. No. 34.)

store the remaining 42% of the proceeds as unclaimed funds subject to any future proceedings that might occur.

Such a future proceeding now has occurred.  On May 18, 2011, the other three of the 2006 Beneficiaries—Salma Zubair, Asma Firfrey, and Haaris Zubair—filed a motion that was titled a motion for reconsideration but essentially is a motion to set aside their default and to award them default judgment.  (*See* Dkt. No. 40.)  In their papers, the moving defendants explain that they defaulted in large part because they thought that their default would mean that all of the life insurance proceeds would go to Danyal and Rania.  In other words, the moving defendants, as aunts and uncle to Danyal and Rania, want their niece and nephew to have their shares of the proceeds and tried to maneuver accordingly without assistance of counsel.  The Court held oral argument on the pending motion on July 8, 2011.

The rule for setting aside an entry of default is straightforward.  "[W]e have established three criteria that must be assessed in order to decide whether to relieve a party from default or from a default judgment.  These widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented."  *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (citations omitted).  The Court will review each of these factors in turn.

As for willfulness, "[w]e have interpreted 'willfulness,' in the context of a default, to refer to conduct that is more than merely negligent or careless . . . . On the other hand, the court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) (citations omitted). Here, the default of the moving defendants was willful in the literal sense that they deliberately chose that course of action.  This is an interpleader case, however, in which all potential rival claimants also have defaulted.  There is no egregious conduct here, and no conduct that would raise issues of prejudice or delay.  The alternative to excusing the moving defendants' conduct is to let unclaimed funds sit with the Court indefinitely.  Additionally, the default of the moving defendants—who until now acted *pro se*—was not intentional in the sense of the outcome of the case.  The moving defendants were motivated by a sincere desire to help their niece and nephew after a difficult and traumatic time in their lives.  Under these circumstances, the Court finds that the default was not willful as that term is understood in *McNulty*.

Finally, the Court notes that the moving defendants have presented what, at face value, appears to be a meritorious claim.  "A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense.  The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted,

4

if proven at trial, would constitute a complete defense." *Enron*, 10 F.3d at 98 (citations omitted); *accord State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 167 (2d Cir. 2004) (citing *Enron*).  Here, the record contains uncontested information indicating that the moving defendants are rightful beneficiaries of Aasiya's life insurance policy.  The record also suggests that significant questions surround the authenticity of the 2008 change of beneficiaries form.  The Court need not assess the chances that the moving defendants would win had the case proceeded all the way to trial.  What matters is that the moving defendants have a facially plausible claim that should proceed to a final judgment given that none of the 2008 Beneficiaries chose to appear.  For these reasons, the Court will set aside the moving defendants' default.

Having set aside the moving defendants' default, the Court now will consider their request for default judgment.  As noted in prior proceedings, the Court is satisfied that all defendants received adequate service of process and are sufficiently aware of the proceedings that have occurred in this case.  *See also* Dan Herbeck, *Aasiya Hassan's Life Insurance Disputed; Beneficiary Change Form Allegedly a Forgery*, Buffalo News, Feb. 27, 2011, at A1.  Despite having adequate notice, the 2008 Beneficiaries never have appeared or tried to set aside their default.  At this point, the Court concludes that the 2008 Beneficiaries have made a decision not to litigate the proper ownership of the life insurance proceeds.

Accordingly, the Court hereby grants the moving defendants' request for default judgment. The Court will modify the request only slightly, to conform the respective percentages of ownership proposed in the motion to the percentages that appeared in the original 2006 policy. In accordance with the 2006 policy, the Clerk of the Court is directed to disburse the *remaining balance* of the life insurance proceeds as follows. Defendant Salma Zubair shall receive 52% of the remaining balance, which is equivalent to the 22% of the original amount that the life insurance policy directed. Defendant Asma Firfrey shall receive 36% of the remaining balance, corresponding to the 15% of the original amount set forth in the policy. Defendant Haaris Zubair shall receive 12% of the remaining balance, corresponding to the 5% of the original amount set forth in the policy. Payment shall be in the name of each respective defendant but may be delivered to their counsel, Joseph DeMarie of DeMarie & Schoenborn, P.C.

## CONCLUSION

For all of the foregoing reasons, the Court grants the pending motion for reconsideration (Dkt. No. 40). The Clerk of the Court shall disburse the remaining balance of the life insurance proceeds as described above.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: JULY 8, 2011